498 A.2d 436

COMMONWEALTH of Pennsylvania

v.

Robby Lee ZOLLER, Appellant.

COMMONWEALTH of Pennsylvania

v.

Michael Eugene FAHNESTOCK, Appellant.

Superior Court of Pennsylvania.

Argued May 2, 1985.

Filed Sept. 6, 1985.

Dale F. Shughart, Jr., Carlisle, for appellant Robby Lee Zoller.

Carol Munson, Assistant Public Defender, for appellant Michael Eugene Fahnestock.

Theodore B. Smith, Assistant District Attorney, for Commonwealth, appellee.

Before TAMILIA, MONTGOMERY and ROBERTS, JJ.

TAMILIA, Judge:

These are consolidated appeals from judgments of sentence of 10–20 years to a state institution following appellants' guilty pleas to third degree murder. Prior to tendering the plea, each appellant was charged with criminal homicide (18 Pa.C.S.A. § 2501), murder (18 Pa.C.S.A. § 2502(a) and (b)) and robbery (18 Pa.C.S.A. § 3701(a)(1)(i)). Following a hearing and denial on September 28, 1984 of a

Petition for Transfer to Juvenile Court, both appellants chose to plead guilty to third degree murder rather than stand trial for first and second degree murder and robbery.

■ The plea agreements were tendered and accepted by the court on November 5, 1984. As part of the agreement, the court was asked to bind itself to a sentence of not less than ten (10) nor more than twenty (20) years of confinement but permitting the parties to argue the place of confinement at the sentencing hearing. Also, the Commonwealth requested that defendants agree to withdraw all then pending motions, pretrial or otherwise, including the Motion for Transfer to Juvenile Court, the Motions to Suppress and the motion filed under Rule 1100. It was, however, correctly determined during the colloquy that the Motion for Transfer was a jurisdictional issue and, therefore, not waivable. *See Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975). Hence, although the instant appeals are from judgments of sentence of 10–20 years, the order, which is the subject of the appeals and the sole issue before us, is whether the trial court erred in refusing appellants' requests for transfer of the proceedings to juvenile court.

A review of the briefs and record reveals the following nondisputed facts: Ronald Harder was a borderline mentally retarded, 46 year old man who, on a number of occasions during the 2–3 years prior to the murder, had homosexual experiences with appellant, Robby Zoller. Harder was killed by appellants, Zoller (age 15, born 9/3/68) and Fahnestock (age 15, born 6/6/68), on September 12, 1983.

After digging a shallow grave with a shovel obtained at the Fahnestock home, and with the intent of killing Harder, appellants lured the victim to the murder site. The two beat Harder over the head with the shovel and dragged him into the grave where appellant, Fahnestock, inflicted another wound. They took the victim's wallet, buried him under dirt and tree limbs, threw the shovel into a creek and washed their hands in a nearby graveyard. Nearly two months later, on November 2, 1983, police received informa-

tion concerning the murder from a school friend of Zoller's in whom Zoller had confided. Both appellants gave statements to police admitting their participation in the scenario described above. The brutal, vile nature of the murder is but one of reasons we affirm the judgment of sentence as to both appellants.

The arguments of appellants and alleged errors of the trial court can be summarized as follows:

1.) Failure to consider the youth's personality and background and prior failure of the juvenile system in rehabilitating them.

2.) Failure to evaluate the underlying circumstances for killing the victim.

3.) The defendants established amenability to the Juvenile Court System.

It was the court's finding that the need for *legal restraint* outweighed the need for treatment in the juvenile system.

As to Robby Zoller, appellant's arguments are ones of social and cultural justification and are untenable. He alleges factors such as parental deprivation, maternal promiscuity, excessive mobility and school transfers, and lack of a positive male model, which resulted in an emotionally immature, socially underdeveloped child with aggressive tendencies. He also alleges the court ignored the fact that the victim sexually molested both he and his two brothers while they were younger and that Zoller was sexually involved with the victim until the time of the killing. Similarly, it is alleged the court ignored the fact that Zoller did well in the detention home under an intensive program prior to trial. Appellant contends he has established amenability to juvenile disposition, and despite the brutal and premeditated nature of the killing, he should have been transferred to the juvenile court.

■ The law applicable to this case is contained in Title 42, Judiciary and Judicial Procedures. Chapter 63, Juvenile Matters, § 6322, Transfer from criminal procedures, provides:

**(a) General rule—**... If it appears to the court in a criminal procedure charging murder, that the defendant is a child, the case *may* similarly be transfered and the provisions of this chapter applied. (emphasis added)

It is clear from the Juvenile Act that exclusive jurisdiction over juveniles charged with an offense, lies with the Juvenile Court, except in a case of murder, which may be transfered pursuant to the above section. Contrary to 42 Pa.C.S.A. § 6355, Transfer to criminal proceedings, which details at great length and precision the requirements which must be met by the Commonwealth in proving a need for transfer from the juvenile court to the criminal court, the legislature was silent as to the test for transfer from criminal court to the juvenile court.

From the language of the act, it is clear that transfer from the criminal court in murder cases is not a matter of right and the determination of whether the interests of the state and society require prosecution of murder on an indictment is left to the sound discretion of the common pleas court. *Commonwealth v. Pyle, supra.*

If appellant is to prevail he must show a gross abuse of the broad discretion of the hearing judge who refused the transfer application. Such abuse may not merely be an error of judgment, but must be a misapplication of the law or an exercise of manifestly unreasonable judgment based upon partiality, prejudice or ill will.

*Commonwealth v. Brown,* 332 Pa.Super. 35, 40, 480 A.2d 1171, 1174 (1984), quoting *Commonwealth v. Romeri,* 314 Pa.Super. 279, 291, 460 A.2d 1139, 1145, aff'd 504 Pa. 124, 470 A.2d 498 (1983). We can rule out partiality, prejudice, or ill will, as none appeared or was alleged, the sentence in this case being the result of a plea agreement. This leaves us primarily with a consideration as to whether the court committed a gross abuse of discretion in the nature of a misapplication of the law.

We find the trial judge exercised sound discretion and is chargeable with no misapplication of the law. Following the evaluation procedure detailed in *Pyle, supra,* the

court found there was amenability and need for treatment provided by the juvenile court but that because of the premeditated, vicious nature of the crime, and lack of remorse for the victim, there was not sufficient time within the maximum available under juvenile court jurisdiction (five years until his twenty-first birthday) to assure rehabilitation and to protect society. As summarized above, appellant had a seriously deprived childhood, but harsh as it may sound, not significantly different from a substantial number of juveniles, who responded to the programs he ignored or was subject to. While the testimony was conflicting as to prognosis for treatment, it is evident that no assurance could be given that appellant's anti-social and aggressive behavior could be abated with treatment by his twenty-first birthday. His lack of conscience and social concern manifested itself abruptly, no signs being identified, despite several contacts, official and otherwise, with juvenile court and child welfare services and despite special interest in him expressed by probation officers. Appellant would now have us believe the murder of Harder was a catharsis, and that he focused all of his pent up anger and frustration on his victim. He points to the good adjustment and progress while in detention as proof of his amenability to treatment. This does not carry the day. In a murder transfer proceeding, the youth must prove that he belongs in the juvenile treatment programs by showing his need and amenability to those programs he would receive as a juvenile. The proof has been of a deprived background and good adjustment while in detention, which is akin to a foxhole conversion. Like the lower court, we are not satisfied that this is sufficient to protect society. This case was a classic case of first degree murder which conceivably could have brought a death penalty. The lack of remorse for the victim, despite remorse for his family, shows a hardness of heart that bodes ominously for future persons with whom appellant comes into contact, who are "depersonalized", the term used by appellant to explain his killing of Harder. This case is governed by the finding in *Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980), in which our Supreme

Court held, in considering psychiatric testimony, that when rehabilitation could not be assured during the child's minority, while subject to juvenile court jurisdiction, the youth failed to meet the required proof that he was amenable to juvenile rehabilitation. *Also see Pyle, supra.*

We find no abuse of discretion and affirm the order of the court below in denying appellant, Zoller, transfer to the juvenile court.

 As to Fahnestock, his background as a juvenile was similarly deviant, highlighted by the forcible robbery of a 91 year old woman. Despite supervision under an intensive treatment program, which was in effect at the time of the Harder killing, he was a full joint participant in the premeditated killing of Harder, and after the initial assault that put Harder into the pre-dug grave, he inflicted another wound on the victim before participating in the burial. Expert psychiatric testimony suggested that a structured program, out of the community for two years or longer, was needed to deal with Michael's problems. As to amenability, the psychiatrist believed he would respond to the treatment within five years, but there was no guarantee. John S. Hargreaves, a consultant to the two secure juvenile institutions at Danville and Weaversville, testified that the programs are geared to nine month stays and five years would be disruptive. It is apparent that amenability to juvenile treatment is in and of itself an inadequate criteria for treatment in this class of case, when the juvenile resources are time limited, and seriousness of the crime and protection of the public warrant longer institutional placement followed by even longer probation supervision. *See Pyle, Romeri, Brown, supra.* Juvenile court jurisdiction terminates at 21, regardless of whether or not appellants continue to pose a threat to society. This appellant was involved in two separate episodes of violence, one which could have resulted in death, the other resulting in a premeditated killing. Every resource of the justice system must be brought to bear to prevent a third. The juvenile system is inadequate to the task. Thus a careful review of

the personal factors, the available resources of the juvenile system in relation to the severity of the offense and the interest of the public, warrant affirmance of the Order of the trial court in denying Fahnestock transfer to juvenile court.

Judgment of sentence at No. 007 Harrisburg, 1985 is affirmed.

Judgment of sentence at No. 012 Harrisburg, 1985 is affirmed.

ROBERTS, J., concurs in result.